**The PENN MUTUAL LIFE INSURANCE COMPANY, Defendant Below, Appellant,**

v.

**John T. OGLESBY, II, M.D., Plaintiff Below, Appellee.**

No. 466, 1996.

Supreme Court of Delaware.

Submitted: May 6, 1997.

Decided: July 9, 1997.

See also, 889 F.Supp. 770.

William W. Erhart, Wilmington; Douglas F. Johnson (argued), of counsel, Westmont, New Jersey, for Appellant.

Anne L. Naczi (argued), and Joel R. Brown of Tybout, Redfern & Pell, Wilmington, for Appellee.

Elizabeth B. Sandza, Wilmington, Rita M. Theisen, of LeBoeuf, Lamb, Greene & MacRae, Washington, D.C., and Phillip E. Stano, American Council of Life Insurance, of counsel, Amicus Curiae for American Council of Life Insurance.

Christopher Curtin, James J. Woods, Jr., of Erisman & Curtin, Wilmington, Amicus Curiae for Delaware Trial Lawyers Association.

Before VEASEY, C.J., HOLLAND and BERGER, JJ.

VEASEY, Chief Justice:

In this certified question proceeding, we answer the substance of questions of Delaware law on insurance coverage posed to us by the certifying court. We hold that an insurer that does not take advantage of a fraudulent misstatement exclusion in a disability insurance contract, where such exclusion is permissible under applicable Delaware statutes, may not avoid coverage on that ground. In addition, we hold that, where the insurance policy contains one provision that would deny coverage, but makes that provision "subject to" others that could be construed to permit coverage, it is the latter provisions that control, any doubt concerning the interpretation of the policy being resolved against the insurer.

### Facts

This case comes to the Court in the form of four certified questions from the United States Court of Appeals for the Third Circuit. The following facts are undisputed and are taken from the Order Certifying Questions of Law.[1]

Plaintiff below-appellee John T. Oglesby, II, M.D. is a radiologist who had developed a specialty in vascular and interventional radiology procedures. In 1981, Dr. Oglesby was diagnosed as having cervical degenerative arthritis. In preparation for a hip replacement operation in 1985, a physician examining Dr. Oglesby recorded a history of "occasional parasthesias of the arms and legs. Arm parasthesias related to cervical degenerative arthritic disease...."

On or about November 24, 1986, Dr. Oglesby applied for a disability income insurance policy from Penn Mutual Life Insurance Company ("Penn Mutual"). On the application for insurance that Dr. Oglesby filled out, signed and certified, he did not provide any information regarding his history of cervical degenerative disease in response to a question asking for information regarding any disease or disorder of the bones, including the spine, back or joints. In connection with the application, on November 3, 1986 a nurse who was contracted by Penn Mutual performed a paramedical examination. The examination form prepared by the nurse, which Dr. Oglesby certified to be true, accurate and complete, likewise contained no information regarding his history of cervical degenerative arthritis. Dr. Oglesby was aware that the disease, which first developed in 1981, would not have disappeared between 1981 and 1986.

Penn Mutual issued a disability income insurance policy to Dr. Oglesby, effective retroactively to February 1, 1987, which provided initial benefits of $5,000 per month in total disability benefits if Dr. Oglesby were to become totally disabled from the substantial and material duties of his regular occupation. The policy provides that, "subject to all provisions of the policy," it covers a disability resulting from a sickness "which first makes itself known while this policy is in force." The policy also states: "We rely on the statements you make in your application. We will not contest those statements after this policy has been in effect for 2 years during your lifetime. Any length of time you are disabled is excluded in computing this 2 year period."

The pre-existing conditions section is the sole provision on a separate page attached to the policy amendment rider. That section provides:

Pre-existing Conditions Excluded

We do not cover a disability or other loss resulting from a pre-existing condition if that disability starts or loss is incurred:

· during the first two years from this policy's Date of Issue, unless the pre-existing condition is fully disclosed in the application and not excluded from coverage by name or specific description; and

· after two years from this policy's Date of Issue and if the pre-existing condition

1. *Oglesby v. Penn Mutual Life Ins. Co.*, 3rd Cir., No. 95–7596, Becker, J. (Nov. 1, 1996).

is excluded from coverage by name or specific description.

A pre-existing condition is a physical condition or sickness which, during the 5 year period prior to the effective date of this policy, caused you:

· to have received medical advice or treatment; or

· to have had symptoms which would have led an ordinarily prudent person to seek medical advice or treatment.

The disability insurance policy issued to Dr. Oglesby is non-cancelable as defined in 18 *Del. C.* § 3306(c).

Beginning in March 1990, Dr. Oglesby began having a recurrence of cervical problems, which, after a brief respite, continued in August of 1990. After August 1990, Dr. Oglesby was diagnosed with a herniated disk, which his treating neurologist testified was the result of the cervical degenerative arthritis which Dr. Oglesby has had since 1981. In October 1990, Dr. Oglesby underwent surgery to alleviate the herniated disk, but the surgery did not mitigate the problem, instead leaving him with a weakened arm and considerable shoulder pain. As a result of these cervical degenerative arthritis problems, Dr. Oglesby has been unable to continue to perform vascular and interventional radiology procedures in his specialty.

The jury in the trial in the United States District Court for the District of Delaware determined that, as of the date of disability in early 1990, Dr. Oglesby's regular occupation was that of a vascular and interventional radiologist.

Penn Mutual sought, and was granted, partial summary judgment in an action in the District Court to rescind certain annual policy riders increasing the amount of insurance benefits payable to Dr. Oglesby in the event of total disability. Each of these riders incorporated by reference the same two-year incontestability period as provided in the base policy, and each rider's incontestability

period commenced on the rider's effective date. Thus, with the 1990 onset of Dr. Oglesby's disability, the timetable of events allowed Penn Mutual successfully to contest the benefit increase riders issued in 1989 through 1992.[2]

After a five-day trial, Senior Judge Murray M. Schwartz of the District Court entered judgment for Dr. Oglesby on the remaining issue of coverage under the main policy because the District Court decided that Penn Mutual should not be allowed to avail itself of a defense based on the doctrine of "first manifest." [3]

Penn Mutual appealed to the United States Court of Appeals for the Third Circuit. The Court of Appeals certified, and this Court accepted, the following four questions of law, finding that the material facts are not in dispute and that the legal questions presented are ones of first instance in Delaware.[4]

1. Based on the pre-existing conditions language of this policy, can the insurer deny disability coverage on the grounds that the insured had a pre-existing condition not disclosed on his application if the insured is not disabled until more than two years after issuance of the policy?

2. For purposes of denying coverage under the pre-existing conditions excluded and pre-existing conditions limitations sections of the policy, does the definition of a covered sickness in the policy (a "*sickness,* which first makes itself known while this policy is in force;" (italics in original)) constitute a sufficient exclusion from coverage "by name or specific description" under 18 *Del. C.* § 3306(a)(2) or under the policy language to permit the insurer to deny coverage for a disability that began more than two years after the policy's date of issue, but was based on a sickness that was known to the insured before the policy was in force?

3. Does the insurer lose its right to deny coverage for a disability commencing more

---

**2.** *Oglesby v. Penn Mutual Life Ins. Co.,* D. Del., 889 F.Supp. 770, 773 (1995) (citing *Oglesby v. Penn Mutual Life Ins. Co.,* D. Del., 877 F.Supp. 872, 890 (1994)).

**3.** *Id.* at 779.

**4.** *Penn Mutual Life Ins. Co. v. Oglesby,* Del.Supr., No. 466, 1996, Holland, J. (Nov. 15, 1996) (ORDER).

than two years after the policy's date of issuance based on a sickness that had first made itself known to the insured before the policy was in force, because the insurer chose to eliminate from its policy language the permissible provision in the incontestability clause allowed by 18 *Del. C.* § 3306 that a "fraudulent misstatement" made by the insured in the application for the policy may be used to deny coverage even for a disability commencing more than two years after the policy's date of issue? In answering this question, the Court may assume that the insured's failure to disclose in his application the condition giving rise to the disability was a "fraudulent misstatement" as defined by 18 *Del. C.* § 3306(a), as well as a "fraudulent statement" as defined in 18 *Del. C.* § 3306(c).

4. Assuming that the policy is "non-cancelable" for purposes of 18 *Del.C.* § 3306(c), do the following provisions from the policy, when read together, satisfy all of the requirements of 18 *Del.C.* § 3306, such that these provisions, when read together, do not make the policy "less favorable to the insured" (as set forth in 18 *Del.C.* § 3331) than the minimum contract provisions for a "non-cancelable" policy required by 18 *Del. C.* § 3306 itself:

*Coverage Provided by This Policy*

Subject to all provisions of this policy, we insure you against disability or other loss resulting from:

· *sickness,* which first makes itself known while this policy is in force: . . .

*Pre–Existing Conditions Excluded*

We do not cover a disability or other loss resulting from a pre-existing condition if that disability starts or loss is incurred:

· during the first two years from this policy's Date of Issue, unless the pre-existing condition is fully disclosed in the application and not excluded from coverage by name or specific description; and

· after two years from this policy's Date of Issue and if the pre-existing condition is excluded from coverage by name or specific description.[5]

*Misstatements in the Application*

We rely on the statements you make in your application. We will not contest those statements after this policy has been in effect for 2 years during your lifetime. Any length of time you are disabled is excluded in computing this 2 year period.

### General Principles

The starting point is the approach to interpreting insurance contracts. They must be interpreted in a common sense manner, giving effect to all provisions so that a reasonable policyholder can understand the scope and limitation of coverage.[6] It is the obligation of the insurer to state clearly the terms of the policy, just as it is the obligation of the issuer of securities to make the terms of the operative document understandable to a reasonable investor whose rights are affected by the document.[7] Thus, if the contract

5. The certified questions as transmitted from the certifying court also inadvertently included a provision that we understand had been superseded. We were informed by counsel for both parties at oral argument that the following superseded provision set forth in the certified question is no longer operative:
*Pre–Existing Conditions Limitations*
If disability starts or a loss is incurred more than 2 years after the Date of Issue, we will not reduce or deny the claim on the ground that a sickness or physical condition existed before this policy's effective date. This does not apply to any sickness or physical condition excluded from coverage by name or specific description.
Accordingly, we will ignore this language and rely instead on all the other parts of the certified questions quoted in the text.

6. *Rhone–Poulenc v. American Motorists Ins. Co.,* Del.Supr., 616 A.2d 1192, 1196 (1992) ("The true test is not what the parties . . . intended it to mean, but what a reasonable person in the position of the parties would have thought it meant."); *Steigler v. Ins. Co. of North America,* Del.Supr., 384 A.2d 398, 401 (1978) (insurance contract "should be read to accord with the reasonable expectations of an ordinary purchaser").

7. *See Kaiser Aluminum Corp. v. Matheson,* Del. Supr., 681 A.2d 392, 399 (1996) ("court must construe the [certificate of incorporation] to adhere to the reasonable expectations of the investors who purchased the security and thereby subjected themselves to the terms of the contract") (citing *Rhone–Poulenc,* 616 A.2d at 1196).

in such a setting is ambiguous, the principle of *contra proferentem* dictates that the contract must be construed against the drafter.

The policy behind this principle is that the insurer or the issuer, as the case may be, is the entity in control of the process of articulating the terms. The other party, whether it be the ordinary insured or the investor, usually has very little say about those terms except to take them or leave them or to select from limited options offered by the insurer or issuer. Therefore, it is incumbent upon the dominant party to make terms clear. Convoluted or confusing terms are the problem of the insurer or issuer—not the insured or investor.

### Application of General Principles to the Certified Questions

■ The insurance policy here begins with a concept that is understandable enough— that is, the coverage is for a "sickness which first makes itself known while this policy is in force." So, it would seem at first blush that nothing is covered that was known to the insured before the policy came into force. But this general coverage provision is expressly made "subject to all provisions of this policy." Therefore, any other provision of the policy that may be inconsistent with this "first manifest" provision can sublimate—or "trump"—the first manifest provision.

It is the provision relating to misstatements coupled with the provision relating to the exclusion of pre-existing conditions that appear to be inconsistent with the first manifest provision. First, the pre-existing exclusion provides, in substance, that there is no coverage for a disability *if* that disability "starts or loss is incurred" during the first two years *and if* it results from a pre-existing condition. Here the disability resulted from the pre-existing condition, but the disability was not incurred during the first two years. Second, the misstatement provision states that the insurer will not contest misstatements after the policy has been in effect for two years. Here the two-year period had expired and there was no fraud exclusion.

Another provision that is inapplicable to the certified questions should nevertheless be mentioned and put in perspective. Coverage may be denied under the policy after two years if a pre-existing condition had been "excluded from coverage by name or specific description." There was a specific exclusion in this policy for a different pre-existing condition of Dr. Oglesby—namely, "any impairment due to degenerative arthritis or rheumatism of the hip region." This was a condition he did disclose and it was specifically excluded. The pre-existing condition he did not disclose—cervical degenerative arthritis, which resulted in his claim of disability for herniated disc, weakened arms and shoulder pain—was not specifically excluded. Hence, the provision denying coverage for exclusion from coverage by name or specific description is not applicable here.

The insurer argues that we should not reach the exclusion for misstatements because it is not the misstatement that is at issue, and that "sickness" and "pre-existing condition" are not synonymous. The insurer contends that the policy never applied at all because the policy does not cover any sickness that was manifest before the policy went into effect. This may have been what the insurer intended,[8] but its argument is refuted by five points:

1. The "subject to all provisions" language modifies the "first makes itself known" provision so that these other provisions sublimate or "trump" the "first makes itself known" provision.

2. One of these other provisions is the pre-existing condition exclusion that applies only when disability starts or loss is incurred during the first two years. Therefore, this exclusion does not apply here because more than two years have elapsed.

3. The other provision is the misstatement provision, which also provides for repose after two years.

4. The insurer did not take advantage of the fraudulent misstatement provision

---

**8.** *See Rhone–Poulenc,* 616 A.2d at 1196 (true test is not what the parties intended, but what a reasonable person would have thought).

available under the statute to extend the misstatement period beyond two years.

5. At best, the policy is unclear or ambiguous, with the result that the insurer may not prevail under the doctrine of *contra proferentem.*

### *The Split of Authority*

Penn Mutual would have this Court adopt the "first manifest doctrine." That doctrine would hold, in substance, that since Dr. Oglesby's cervical arthritis first made itself known, or "first manifested" itself, in 1981, long before the policy went into effect, it may deny coverage here. As Judge Schwartz noted in his excellent opinion in this case, "[a]lthough the 'first manifest' doctrine has been either embraced or rejected by other jurisdictions, it is a question of first impression in Delaware." [9] Also, as Judge Schwartz noted, the issues before this Court involve "policy choices concerning the effect of an insured's concealment of prior sickness." [10] Judge Schwartz then noted the split of authority [11] on this question and concluded that "the Supreme Court of Delaware would not relieve Penn Mutual of its bad bargain by allowing it to use a defense of 'first manifest' at trial." [12] We agree.

### *The Delaware Statutes*

The Delaware statutory scheme mandates certain incontestability provisions. Central to that scheme is a contestability repose after two years except for fraudulent misstatements—if the policy includes the fraud exception, [13] which Penn Mutual elected not to avail itself of here. Likewise, the statute does not permit reduction or denial of a claim after two years unless the particular condition is specifically named or described in the policy as coming within that exclusion. [14] The other statutes mentioned in the certified questions are of general application and do not control our answer to the certified questions, [15] except to the extent that we hold the policy in question complies with the statute as construed herein.

### *Conclusion*

Here, the insured is a physician who fraudulently concealed a pre-existing medical condition. Distasteful as it may be to permit the perpetrator of a fraud to prevail, the insured here is entitled to coverage because his claim was made after the two-year contestability period provided in the policy, and the insurer elected not to place in the policy a provision, permissible by statute, which could have allowed it to contest fraudulent misstatements even after the two-year period.

An insurance policy must be read as a whole. Here, the policy provides coverage, "subject to all provisions of this policy," for disability resulting from "sickness, which first makes itself known while the policy is in force." Although the fraudulently concealed pre-existing condition was known by the insured before the policy was in force, the "first makes itself known" language (sometimes called a "first manifest" provision) is expressly made "subject to all provisions of" the policy. Those latter provisions control and permit coverage here. Alternatively, if the structure or terms of the policy are ambiguous or unclear, the issue of coverage must be resolved in favor of the insured.

Accordingly, we answer the certified questions as follows:

Number 1. No, not under the terms of the policy.

Number 2. No. The provision relating to exclusion by "name or specific descrip-

---

9. *Oglesby v. Penn Mutual Life Ins. Co.,* 889 F.Supp. at 773.

10. *Id.* at 774 (citing *Paul Revere Life Ins. Co. v. Haas,* N.J.Supr., 137 N.J. 190, 644 A.2d 1098, 1101 (1994)).

11. *Id.* at 776–77.

12. *Id.* at 779.

13. 18 *Del.C.* §§ 3306(a)(1) and 3306(c).

14. 18 *Del.C.* § 3306(a)(2). As noted above, this issue has no application here.

15. 18 *Del.C.* § 3304(a) (mandating that policies must contain provisions in other statutes in chapter 33 or provide specified options); 18 *Del.C.* § 3331(a) (policies may not contain provisions less favorable to insured than statutes in chapter 33).

tion" is not applicable here. The "first manifest" language, which might otherwise have been a basis to deny coverage, is sublimated to the later pre-existing condition and misstatement provisions which are either ambiguous or allow coverage.

Number 3.  Yes.

Number 4.  Yes, as construed herein.