FUENTES, Circuit Judge,
dissenting in part.
I agree with the majority that the term “officer” as used in the advancement provision of the By-Laws is ambiguous. But unlike the majority, I believe that Delaware has clearly stated the rule for deciding between competing interpretations of an ambiguous term: courts should construe the ambiguous term in the corporate instrument against the drafter, rather than inviting the use of extrinsic evidence to decipher the term’s meaning. Delaware has never suggested that there is an exception to its contra proferentem rule where the ambiguity concerns “whether a plaintiff is a party to or beneficiary of a contract.” Maj. Op. at 366. Thus, I would resolve the ambiguous term “officer” against Goldman Sachs and conclude, as a matter of law, that Sergey Aleynikov, a vice president at Goldman, was an officer and therefore entitled to advanced legal fees. I believe Delaware law compels this conclusion, as does the public policy animating Delaware’s interpretation of governing documents.
I therefore dissent.
I.
Under Delaware law, a court generally must allow a case involving an ambiguous contract to proceed to trial, so that the finder of fact may “consider the relevant extrinsic evidence in aid of identifying which of the reasonable readings was intended by the parties.” Harrah’s Entm’t, Inc. v. JCC Holding Co., 802 A.2d 294, 309 (Del.Ch.2002) (citing Eagle Indus, v. DeVilbiss Health Care, Inc., 702 A.2d 1228, 1232 (Del.1997)). However, Delaware follows a different rule where the ambiguous contract at issue is a firm’s governing document. Stockman v. Heartland Indus. Partners, LLP, 2009 WL 2096213, at *5 (Del.Ch. July 14, 2009). Where such a governing document “makes promises to parties who did not participate in negotiating the agreement, Delaware applies the general principle of contra proferentem,” and construes ambiguous provisions against the drafter without resorting to extrinsic evidence. Id.; see also SI Mgmt. L.P. v. Wininger, 707 A.2d 37, 42-44 (Del.1998) (applying contra proferentem when interpreting a partnership agreement); Shiftan v. Morgan Joseph Holdings, Inc., 57 A.3d 928, 935 (Del.Ch.2012) (applying contra proferentem when interpreting a certificate of incorporation).
This rule applies where the ambiguous provision at issue concerns advancement.[1] See Stockman, 2009 WL 2096213, at *5; DeLucca v. KKAT Mgmt., L.L.C., 2006 WL 224058, at *6 (Del.Ch. Jan. 23, 2006). Indeed, if anything, Delaware’s impulse to construe governing instruments against their drafters applies with greater force to *369 advancement provisions, because “Delaware has a strong public policy in favor of [advancement].” Id. at *7; see also Homestore, Inc., 888 A.2d at 211 (Del.2005).
Goldman’s By-Laws “make[] promises [of advancement] to parties who did not participate in negotiating the agreement.” See Stockman, 2009 WL 2096213, at *5. Under Delaware law, then, Goldman must clearly notify its employees whether they are entitled to advancement under its ByLaws. See id. As the majority explains, Goldman has failed to do so. See Maj. Op. at 361. It has drafted an advancement provision susceptible to more than one interpretation. Accordingly, Delaware law requires us to apply the doctrine of contra proferentem and construe the provision against Goldman.
II.
The majority has declined to apply Delaware’s contra proferentem doctrine to the advancement provision of the By-Laws, because, it says, this dispute concerns whether Aleynikov is entitled to benefits under the By-Laws and not what those benefits include. The majority draws this distinction from its survey of Delaware cases: they apply contra proferentem to ambiguities as to the scope of a particular benefit, but are silent as to whether contra proferentem applies to ambiguities concerning an individual’s entitlement to the benefit at all.
But the fact that Delaware has not applied contra proferentem in this exact circumstance does not mean that it would not do so were it given the opportunity. And given the clear language in Delaware case law stating that contra proferentem applies to ambiguous provisions of governing documents, I believe that it is not appropriate to craft an exception to Delaware’s rule, unless the public policies motivating the rule are inapplicable to these circumstances. In my view, however, the policies supporting Delaware’s use of contra proferentem would plainly be furthered by applying the doctrine to this case. Specifically, construing the advancement provision against Goldman would (1) assure relevant stakeholders that they could reasonably rely on the face of governing documents of Delaware corporations, and (2) encourage Goldman to redraft the advancement provision in its By-Laws.
A.
Generally speaking, persons working for, and contracting with, a firm do not take part in the drafting of the document that creates the firm and governs its conduct. Rather, these persons and entitled — referred to here as the firm’s stakeholders — conduct business with the firm after the governing document is drafted, and they must then decide whether to interact with the company based upon the representations of a unilaterally drafted document. See Stockman, 2009 WL 2096213, at *5 (noting that a firm’s stakeholders “look to the governing instrument’s words” when determining whether to engage with a company); see also Bank of N.Y. Mellon v. Commerzbank Capital Funding Trust II, 65 A.3d 539, 551 (Del.2013). Delaware’s robust application of contra proferentem accounts for this reliance interest by “protecting] the reasonable expectations of people who join a partnership or other entity after it was formed and must rely on the face of the operating agreement to understand their rights and obligations when making the decision to join.” Stockman, 2009 WL 2096213, at *5. This “in turn benefits the entity by encouraging [stakeholders] to provide their capital, be it human or finan *370 cial, at a lower cost than they would if they faced greater uncertainty.” Id. at *8.
By rejecting the District Court’s application of contra proferentem, we open the door for the finder of fact to determine a governing document’s meaning using extrinsic evidence. But as the Delaware Chancery Court has noted, looking to extrinsic evidence to make sense of these documents, rather than construing them against their drafters as a matter of law, contravenes the public policy outlined above. Specifically, doing so “undermine^] the ability of investors, officers, and other relevant constituencies to rely on the written text of governing instruments in deciding whether to invest in, work for, or supply debt capital to entities.” Id. at *5. Such an outcome is bad for that firm’s employees, its investors, and its shareholders.
The reasonable expectation of a vice president that he is an officer of a corporation (and is entitled to the benefits provided for in the By-Laws) is the very sort of expectation that Delaware corporate law clearly protects. Aleynikov “join[ed Goldman] ... after it was formed” and “reified] on the face of fits By-Laws]” — that is, a vague promise that he was an officer entitled to advancement — “to understand [his] rights and obligations when making the decision to join.” See id. Honoring this reasonable expectation would assure other stakeholders that they, too, may rely on governing documents when doing business with entities organized in Delaware.
By contrast, today’s majority opinion does not honor Aleynikov’s reasonable expectations about the meaning of Goldman’s By-Laws. In fact, as I explain below, it privileges the subjective views of Goldman about the meaning of the term “officer” over the reasonable expectations of its employees. Doing so “undermine[s] the ability of ... relevant constituencies to rely on the written text of governing instruments in deciding whether to invest in, work for, or supply debt capital to entities.” See id.
B.
Delaware’s application of contra profer-entem serves another, related public policy: it encourages corporations to draft clear corporate instruments and ensures that “governing instruments of entities [are] interpreted consistently and that they [are] applied in a predictable manner.” Stockman, 2009 WL 2096213, at *5; accord Penn Mut. Life Ins. Co. v. Oglesby, 695 A.2d 1146, 1149-50 (Del.1997) (noting that it is incumbent on an issuer of securities to make the terms of its operative documents clear to a reasonable investor). By contrast, resorting to extrinsic evidence in construing ambiguous corporate instruments, as the majority does, “create[s] unpredictable results [and] reduce[s] the incentives for clear drafting.” Stockman, 2009 WL 2096213, at *5.
By construing the advancement provision against Goldman, we would incentivize Goldman to rewrite the provision, so that it unambiguously states which of its employees are officers. But today’s ruling encourages Goldman to do the opposite: keep the ambiguous language in place, thereby giving many persons the reasonable expectations they will receive advancement, while reserving the right to make unpredictable post hoc determinations about which former employees should be advanced attorney’s fees and which shouldn’t. Such an outcome is inconsistent with Delaware law.
III.
Aside from contravening Delaware’s public policy, the majority’s decision also misapplies Delaware’s decisional law. The majority suggests that Delaware’s contra *371 proferentem doctrine applies only in resolving the scope of rights promised by a governing agreement, but that it “has no application in resolving whether a person has rights under the contract at all.” Maj. Op. at 367. This is so, the majority states, because “ ‘[t]he bylaws of a Delaware corporation constitute part of a binding broader contract among the directors, officers, and stockholders.’ ” Id. at 366 (quoting Boilermakers Local 154 Ret. Fund. v. Chevron Corp., 73 A.3d 934, 939 (Del.Ch.2013)). In other words, the majority appears to suggest that, under Delaware law, one is entitled to the protections of contra proferentem only where the plaintiff is definitely a director, officer, or shareholder, but not where his membership in one of these groups is in question.
There are several problems with this position. First, Boilermakers Local 154, the case relied on by the majority, does not concern contra proferentem. It says nothing at all about when that doctrine applies to the interpretation of a firm’s governing document.
Second, Delaware case law contradicts the notion that a corporate instrument is construed against the drafter only where the plaintiff is indisputably a shareholder, officer, or directors. Indeed, the Chancery Court has explained that contra prof-erentem protects all persons or entities “who provide benefits to the entity” and who “rely on [the governing document] in making their decisions about whether to participate in the entity’s activities.” Stockman, 2009 WL 2096213, at *8. The Delaware Courts believe that ensuring all relevant stakeholders that they can rely on their reasonable expectations about the meaning of governing instruments is essential to the existence of a smoothly running marketplace. As an employee, Aley-nikov was entitled to rely on promises made to him in the By-Laws. See id. at *5 (noting that the “concerns” motivating Delaware’s robust application of contra proferentem in this context are “equally applicable to the directors, officers, and employees” of an organization); see also 8 Del. C. § 109(b) (providing that a corporation’s by-laws may contain provisions relating to “the rights or powers of,” among others its “employees”).
Third, the majority does not explain why Delaware would apply contra proferentem where a governing document is vague as to the benefit’s scope, yet would not apply the doctrine where the document is vague as to who receives it. As I note above, applying the doctrine in both contexts furthers Delaware public policy by encouraging clearer drafting, and by protecting the reasonable expectations of the relevant stakeholders.
In short, neither Delaware case law, nor Delaware public policy, favors the exception to Delaware’s contra proferentem doctrine set forth by the majority. I therefore believe that we are obliged to apply contra proferentem here, and construe the advancement provision of the By-Laws against Goldman.
IV.
Today’s ruling sanctions the consideration of two categories of so-called “course of dealing” evidence: (1) evidence that Goldman invoked its discretion in agreeing to pay the legal fees of individuals in similar positions to Aleynikov; and (2) internal Goldman documents that “appointed and/or removed individuals as officers of GSCo,” as well as “evidence that the persons occupying the positions of officer, as appointed in the documents, were publicly identified in regulatory filings.” Maj. Op. at 363. This evidence does not speak to the mutual understanding of the contracting parties. I therefore believe it is irrele *372 vant and cannot be considered by the finder of fact.
In Delaware, “[t]he goal in reviewing the extrinsic evidence is to determine if there is a meaning of the [contract] such that an ‘objectively reasonable party in the position of either bargainer would have understood the nature of the contractual rights and duties to be.’ ” KFC Nat’l Council & Adver. Co-op., Inc. v. KFC Corp., 2011 WL 350415, at *15 (Del.Ch. Jan. 31, 2011) (emphasis added); see also Restatement (Second) of Contracts, § 223(1) (explaining that admissible “course of dealing” evidence concerns “a sequence of previous conduct between the parties to an agreement which is fairly to be regarded as establishing a common basis of understanding for interpreting their expressions and other conduct” (emphasis added)).
By contrast, evidence that goes only to the subjective belief of one of the contracting parties about the meaning of the contract is irrelevant. See In re IBP, Inc. S’holders Litig., 789 A.2d 14, 55 (Del.Ch.2001). As I explain above, rarely does an individual employed by, or investing in, a firm take part in the drafting of its governing document. Accordingly, where a person’s rights under a firm’s governing agreement are at issue, there is no meeting of the minds as to the document’s meaning. And by extension, of course, there can be no relevant evidence concerning the parties’ mutual understanding of the agreement’s meaning. See, e.g., Bank of N.Y. Mellon, 65 A.3d at 551 (in interpreting limited liability company agreement, extrinsic evidence “yield[s] information about the views and position of only one side of the dispute,” and is therefore “unhelpful” in deciphering the contract’s meaning); Kaiser Aluminum Corp. Matheson, 681 A.2d 392, 397 (Del.1996) (consideration of extrinsic evidence to discern meaning of certificate of designation was inappropriate).
At best, the evidence that Goldman invoked its discretion when providing legal fees to some of its former employees demonstrates the sincerity of Goldman’s subjective belief that it is not required to indemnify and advance fees to vice presidents under the By-Laws. This evidence says nothing at all about Aleynikov’s reasonable expectation that he would receive advancement and indemnification when he joined Goldman. Neither the majority nor Goldman has suggested that Aleynikov knew, when he began working for Goldman, that Goldman believed it had the discretion to provide attorney’s fees to vice presidents.
The same goes for the evidence that Goldman appointed its officers by formal resolution. There is no evidence that Al-eynikov knew of these internal documents or regulatory filings when he joined the firm. Nor, I assume, is the majority suggesting that Aleynikov had a duty to scour Goldman’s regulatory filings to understand the scope of his benefits.
Both categories of evidence, then, speak only to Goldman’s views about what it means to be an officer in its organization. Neither category speaks to what both sides’ expectations were when entering into the contract. Thus, the evidence is “unhelpful” in divining the meaning of the advancement provision of the By-Laws. See Bank of N.Y. Mellon, 65 A.3d at 551. Worse, by allowing the finder of fact to consider evidence of Goldman’s subjective belief about the meaning of its poorly drafted advancement provision, we privilege Goldman’s unilateral view about what its By-Laws mean over the reasonable expectations of its employee. As I explain above, this contravenes Delaware public policy, which resolutely protects the reasonable expectations of persons interacting *373 with Delaware corporations. Stockman, 2009 WL 2096213, at *5.
The majority’s rationale for using this evidence is that the majority is “left in a bind” after declining to apply contra prof-erentem. Maj. Op. at 362. To be sure, declining to use contra proferentem where a contract is unilaterally drafted leaves us with no satisfactory mechanism to determine the meaning of the governing agreement. That is why we should apply Delaware’s rule of interpretation to construe ambiguous provision of the By-Laws against Goldman.
V.
In sum, I would construe the advancement provision of the By-Laws against Goldman. The distinction drawn by the majority not only lacks any basis in Delaware law, it also lacks any clear policy rationale. In fact, Delaware public policy would be benefited by construing the advancement provision in the By-Laws against Goldman. Moreover, by declining to use contra proferentem, the majority has invited the use of improper extrinsic evidence to determining what the parties meant. For these reasons, we should conclude that Aleynikov is an officer under the By-Laws and is entitled to advancement of his legal fees from Goldman.
I therefore respectfully dissent.

. Advancement is related to, but distinct from, indemnification. Indemnification provides reimbursement of legal expenses incurred by corporate officials in legal proceedings, while "[a]dvancement provides corporate officials with immediate interim relief from the personal out-of-pocket financial burden of paying the significant on-going expenses inevitably involved with investigations and legal proceedings.” Homestore, Inc. v. Tafeen, 888 A.2d 204, 211 (Del.2005).