**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 18-2712
_____

EMSI ACQUISITION, INC., as assignee of Mark S. Davis and Robert P. Brook

v.

RSUI INDEMNITY COMPANY, a Hong Kong limited liability company

v.

ESMI HOLDING COMPANY, c/o The Corporation Trust Company,

RSUI Indemnity Company,
Appellant

_____

On Appeal from the United States District Court
For the District of Delaware
(D.C. Civil No. 1-16-cv-01046)
District Judge: Honorable Leonard P. Stark
_____

Submitted Under Third Circuit L.A.R. 34.1 (a)
May 23, 2019

Before: MCKEE, SHWARTZ, and FUENTES, *Circuit Judges.*

(Filed: September 19, 2019)
_____
OPINION[**]
_____

---

[**] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

FUENTES, *Circuit Judge*.

A Delaware company, EMSI-Acquisition ("Acquisition"), purchased 100% of the stock of another company named EMSI. Shortly thereafter, Acquisition discovered that certain EMSI officers misrepresented EMSI's financials during the purchase negotiations. Acquisition sued, seeking damages. The officers settled, paying Acquisition some money and assigning Acquisition their rights under a Directors and Officers insurance policy held by EMSI. Acquisition now seeks indemnification from that policy's issuer, RSUI Indemnity Company.

RSUI argues Acquisition cannot recover, citing several policy terms in support. The District Court disagreed with RSUI, and it granted judgment in favor of Acquisition. For the reasons stated here, we agree with the District Court, and will affirm judgment.

**I.**

As relevant here, EMSI held a liability insurance policy with RSUI designed to indemnify its directors and officers from any liability stemming for their work on behalf of the company. With its acquisition looming, EMSI modified the terms of that policy: It set the policy coverage end date to be the same as the acquisition closing date, and exercised an option to set the discovery period for covered acts to six years after the closing date.[1] That policy contained several clauses important to this appeal.

_____

[1] EMSI also purchased a separate policy for coverage after the closing date, which the District Court held did not apply to the acts at issue here, and it is not relevant for the purposes of this appeal.

The first is the Major Shareholder Exclusion, which states that the insurer will not be liable for any claim "brought by or on behalf of individuals or entities that own, beneficially or directly, five percent (5%) or more of the outstanding stock of the Insured Organization."[2] EMSI furnished a list of shareholders meeting that standard when it acquired the policy, but did not update that list when the qualifying shareholders changed— nor does RSUI allege the policy required EMSI to do so.

The second relevant clause is the Merger and Acquisition clause, which provides that if "[a]ny person or entity . . . shall acquire an amount of more than fifty percent (50%) of the voting power for the election of directors . . . then this policy shall continue in full force and effect for any Wrongful Act occurring prior to the effective time of the Transaction."[3]

The last clause at issue here is the policy's definition of loss. The policy defines loss as "damages (including back pay and front pay), settlements, judgments (including pre- and post-judgment interest on a covered judgment) and Defense Expenses."[4] This provision goes on to exclude some forms of loss, such as "[a]mounts owed under any employment contract, partnership, stock or other ownership agreement, or any other type of contract" and "[m]atters that may be uninsurable under the law pursuant to which this policy shall be construed."[5]

---

[2] A450.
[3] A488.
[4] A443.
[5] *Id.*

After the sale closed, Acquisition alleged that EMSI officers had made fraudulent representations to Acquisition prior to the sale, and sued. After a circuitous route through litigation, the officers settled with Acquisition, paying Acquisition an amount of money, and assigning their indemnity rights under RSUI's policy to Acquisition. As the assignee, Acquisition is now in the position of suing RSUI to indemnify it for the payments the officers made to it.[6]

RSUI refuses to indemnify Acquisition under the policy. RSUI believes that the Major Shareholder Exclusion bars Acquisition—as the 100% shareholder of EMSI—from bringing a claim. It also asserts that the officers' settlement payment is not a "loss" under the policy's definition.

The parties cross-moved for judgment on the pleadings as to whether the Major Shareholder Exclusion applied. The District Court concluded that the policy was ambiguous as to whether the Major Shareholder Exclusion bars Acquisition from bringing a claim. Because Delaware law resolves ambiguity in an insurance policy in favor of coverage, the District Court granted judgment in favor of Acquisition.

The parties then filed cross-motions for summary judgment as to whether the policy's definition of loss precluded Acquisition's claim. The District Court concluded the

---

[6] Acquisition sued the two officers in Delaware Chancery court. While that suit was pending, the officers sought indemnification from RSUI, filing suit in Delaware Chancery court. RSUI removed the case to the District of Delaware. This second lawsuit is the one before us now. While that case was pending, the officers settled with Acquisition in the first suit. Acquisition was then substituted as the plaintiff here.

4

policy did not, again granting judgment in favor of Acquisition. RSUI has appealed both decisions to us.

## II.

We apply plenary review to motions for judgment on the pleadings[7] as well as motions for summary judgment.[8] When evaluating either motion, we view all factual allegations and all pleadings in the light most favorable to the non-moving party.[9] The movant must establish that there are no genuine issues of material fact and that they are entitled to judgment as a matter of law.[10]

The parties agree that Delaware law applies to the policy. Delaware courts treat interpretation of an insurance policy as a question of law.[11] Insurance contracts, like all contracts, are interpreted as a whole and construed to give effect to the parties' intentions.[12] When a contract is clear and unambiguous, it must be given its plain and ordinary

---

[7] *See Sikirica v. Nationwide Ins. Co.,* 416 F.3d 214, 219 (3d Cir. 2005) (citing *Jablonski v. Pan Am. World Airways, Inc.,* 863 F.2d 289, 290 (3d Cir. 1988)).

[8] *Lawson ex rel. Lawson v. Fortis Ins. Co.*, 301 F.3d 159, 162 n.1 (3d Cir. 2002) (citing *Med. Protective Co. v. Watkins*, 198 F.3d 100, 103 (3d Cir. 1999)).

[9] *Rosenau v. Unifund Corp.,* 539 F.3d 218, 221 (3d Cir. 2008) (quoting *Jablonski,* 863 F.2d at 290); *Big Apple BMW, Inc. v. BMW of N. Am. Inc.*, 974 F.2d 1358, 1363 (3d Cir. 1992) (citing *Country Floors, Inc. v. P'ship Composed of Gepner & Ford*, 930 F.2d 1056, 1061 (3d Cir. 1991)).

[10] *Rosenau*, 539 F.3d at 221 (quoting *Jablonski,* 863 F.2d at 290); *Big Apple BMW*, 974 F.2d at 1362 (citing Fed. R. Civ. P. 56(c)).

[11] *See Rhone-Poulenc Basic Chems. Co. v. Am. Motorists Ins. Co.*, 616 A.2d 1192, 1195 (Del. 1992) (citing *Aetna Cas. & Sur. Co. v. Kenner*, 570 A.2d 1172, 1174 (1990)).

[12] *AT&T Corp. v. Faraday Capital Ltd.,* 918 A.2d 1104, 1108 (Del. 2007) (quoting *Nw. Nat'l Ins. Co. v. Esmark*, Inc., 672 A.2d 41, 43 (Del. 1996)).

meaning.[13]  A contact is unambiguous when "the court can determine the meaning of a contract 'without any other guide than a knowledge of the simple facts on which, from the nature of language in general, its meaning depends.'"[14]

Delaware law resolves ambiguity in insurance contracts in favor of coverage.[15] Contract provisions are ambiguous when they are "reasonably or fairly susceptible to different interpretations or may have two or more different meanings."[16]

RSUI contends that, because Acquisition owns 100% of EMSI's shares, the Major Shareholder Exclusion bars Acquisition's claim.  That exclusion prohibits an owner of more than 5% of EMSI's shares from coverage.  RSUI argues that the exclusion applies when a claim is made.[17]

The District Court concluded, however, that this provision was ambiguous as to whom it applied.  In doing so, it relied on several facts.  For example, it pointed to the fact

---

[13] *See Rhone-Poulenc,* 616 A.2d at 1995-96 (citing *Steigler v. Ins. Co. of N. Am.*, 384 A.2d 398, 400 (Del. 1978)).

[14] *Id.* at 1196 *(*quoting *Holland v. Hannan,* 456 A.2d 807, 815 (D.C. 1983).

[15] *Penn Mut. Life Ins. Co. v. Oglesby,* 695 A.2d 1146, 1149-51 (Del. 1997).

[16] *Rhone-Poulenc,* 616 A.2d at 1196 (citing *Hallowell v. State Farm Mut. Auto. Ins. Co.*, 443 A.2d 925, 926 (1982)).

[17] This is known as a "claims-made" policy, as opposed to an "occurrence" policy. *See Bensalem Twp. v. Int'l Surplus Lines Ins. Co.*, 38 F.3d 1303, 1316 n.1 (3d Cir. 1994) (Hutchinson, J., concurring) ("Claims-made policies allow the insurer to make a more precise calculation of premiums based upon the costs of the risks assumed, a calculation that is difficult, if not impossible, in an occurrence-made policy where the insurer is faced with an unlimited 'tail' of potential liability extending beyond the policy period."); *Hoechst Celanese Corp. v. Certain Underwriters at Lloyd's*, 656 A.2d 1094, 1095 (Del. 1995) ("Claims-made policies provide coverage only where the underlying claim is first made, in writing, during the policy period.  Therefore, the initial focus under a claims-made policy is on the date of the first written assertion of the claim, rather than the date of the injury or the damage alleged within that claim.")

that EMSI did not need to update its list of major shareholders, arguably implying that it was only that original list of shareholders that are excluded. The District Court found it reasonable to believe that such a provision would prevent individuals from knowingly engaging in wrongful acts and then seeking insurance coverage to indemnify themselves. One can imagine, for example, a group of owner-directors acquiring insurance, knowingly committing wrongful acts, and then selling their stakes, knowing the insurance would indemnify them. A provision barring major owners at the time the policy was issued from bringing claims would prevent that situation.

The District Court also found it reasonable to interpret the 6-year discovery period extension as converting the nature of the policy from a claims-made policy to an occurrence policy. Acquisition argues that reading the extension any other way would render the extension superfluous; in their view, it would make no sense to extend the policy's discovery period after an acquisition if the policy barred an acquirer from making any claim. Acquisition contends instead that the better reading of the policy is to understand the Major Shareholder Exception to apply to the major shareholders at the time RSUI issued the policy. It also contends that we should read the M&A Clause and discovery period extension as ensuring the policy continued after an acquisition, allowing the acquirer to seek coverage. RSUI vehemently disagrees with the legal basis for this, arguing that the discovery extension cannot convert a policy from a claims-made to an occurrence-based policy.

However, as the District Court said, "the ambiguity in the [Major Shareholder Exception] is not a matter of whether the [policy] bar[s] claims by Major Shareholders,

7

but, instead, is a function of who those Major Shareholders are."[18]  If the Major Shareholder Exception bars the major shareholders at the time the policy was issued, then the question of whether the policy was claims-made or occurrence-based is irrelevant; the same set of shareholders would be excluded no matter how the policy was characterized.

The issue here is not what the policy's language definitively means.  The question instead is whether the language "is reasonably or fairly susceptible of different interpretations."[19]  We agree with the District Court that such is the case here, and the provision is therefore ambiguous.  Because ambiguity resolves in favor of coverage, we will affirm the District Court's judgment on this ground.

RSUI also argues that the District Court erred by concluding that Acquisition's settlement with the officers constitutes a "Loss" for insurance purposes.  The policy explicitly covers money owed from "settlements,"[20] but RSUI argues nevertheless that the settlement is precluded because the definition of "loss" precludes "amounts owed under any . . . type of contract."[21]  It contends that, because the EMSI officers agreed to indemnify EMSI for "any breach of any representation of warranty . . . contained"[22] in the acquisition agreement, any misrepresentations on their part "are so intertwined with [a] contract claim that they cannot be separated."[23]

---

[18] A17.
[19] *Rhone-Poulenc*, 616 A.3d at 1196 (citing *Hallowell*, 443 A.2d at 926).
[20] A443.
[21] *Id*.
[22] A639.
[23] Appellant Br. 41-42.

However, the District Court, reviewing the underlying complaint in this case, found that the settlement payments were "in part payments made due to alleged tortious misrepresentations made by" the EMSI officers.[24] Since some of those misrepresentations were made during the acquisition's due diligence period, the District Court found that the claims based on those misrepresentations at least might not give rise to indemnification under the acquisition contract. It therefore held that the settlement payments were not excluded by the policy. Here again, we agree with the District Court's analysis.

RSUI also contends that the EMSI officers were never legally entitled to the money they received as a result of their misrepresentations, and therefore the money they paid in settlement cannot be an insurable loss—the officers never should have had it in the first place. However, RSUI admits that no Delaware decision supports their theory. We will affirm the District Court on this ground as well.

### III.

For the foregoing reasons, we will affirm the District Court's orders.

---

[24] A956.