# IN THE SUPREME COURT OF THE STATE OF DELAWARE

MARK GINSBERG, § 
Individually, and as Executor of § 
the ESTATE OF LISA DAVIS, § No. 431, 2023
and RON ZOLADKIEWICZ, as § 
Ad Litem Guardian of § Court Below: Superior Court
BRANDON ZOLADKIEWICZ, § of the State of Delaware
a Minor Child, § 
 § C.A. No. N22C-08-165
Plaintiffs Below, § 
Appellants, § 
 § 
v. § 
 § 
HARLEYSVILLE § 
WORCESTER INSURANCE § 
COMPANY, n/k/a § 
NATIONWIDE PROPERTY § 
AND CASUALTY § 
INSURANCE COMPANY, § 
 § 
Defendant Below, § 
Appellee. § 

Submitted: September 4, 2024
Decided: October 29, 2024

Before **SEITZ**, Chief Justice; **VALIHURA** and **LEGROW**, Justices.

Upon appeal from the Superior Court. **REVERSED AND REMANDED**.

Adam F. Wasserman, Esquire, CICONTE WASSERMAN & SCERBA, LLC, Wilmington, Delaware *for Plaintiffs Below/Appellants*.

Cynthia G. Beam, Esquire, REGER RIZZO & DARNALL LLP, Wilmington, Delaware *for Defendant Below/Appellee*.

**SEITZ**, Chief Justice:

Lisa Davis and her husband, Mark Ginsberg, insured their cars with separate but nearly identical insurance policies from the same carrier. In a car crash with an uninsured drunk driver, Davis died, and her son was seriously injured. Her husband, individually and as executor of her estate, and the child's father, Ron Zoladkiewicz, as guardian ad litem for his son, Brandon Zoladkiewicz, sought uninsured motorist coverage from both policies.

For underinsured/uninsured coverage, the Delaware Insurance Code provides that when "2 or more vehicles owned or leased by persons residing in the same household are insured by the same insurer or affiliated insurers, the limits of liability . . . shall not exceed the highest limit of liability applicable to any 1 vehicle."[1] In other words, under the circumstances described in the statute, when there are two or more policies, recovery is limited to the one policy with the highest limit of liability. Here, both policies contained identical limits of liability provisions. The insurance carrier agreed to pay the coverage limit for only one policy. The insureds were not allowed to combine or stack the two policies.

After the plaintiffs filed suit, the Superior Court agreed with the carrier that the Insurance Code limited coverage to one policy and dismissed the complaint. It reasoned that, even though a provision in each policy permitted overlapping

---

[1] 18 *Del. C.* § 3902(c) (2024).

coverage, the statute limited coverage to one policy if the policies were issued by the same insurance company to insureds in the same household.

We reverse. The Insurance Code does not prohibit combining or stacking under/uninsured insurance coverage policies issued by the same carrier to insureds in the same household. Instead, in that instance, the Code requires that the court limit coverage to "the highest limit of liability" set by either insurance policy. Here, in their "Other Insurance" provisions, both policies allowed stacking. But the policies also provided that, when the same or affiliated carriers provide coverage to insureds in the same household, the coverage is limited to the policy with the "highest limit of liability." In each policy, the two policy provisions conflict and the policies are therefore ambiguous. We interpret the policies in favor of the insureds. The "Other Insurance" provisions with their permissive stacking provisions provide the "highest limit of liability."

Finally, even though Ginsberg signed a release, he signed in an individual capacity. He did not release claims as executor of Ms. Davis's estate. And the release signed by Brandon Zoladkiewicz was limited to the Davis Policy. Thus, Ginsberg (as executor) and Brandon Zoladkiewicz can stack the Davis and Ginsberg policies.

I.

A.

The material facts are undisputed. On September 28, 2020, Lisa Davis and her son, Brandon Zoladkiewicz, were in a car crash with an uninsured driver who was under the influence of alcohol. Davis died. Brandon Zoladkiewicz suffered serious injuries. At the time of the crash, Davis and Brandon Zoladkiewicz were insured under two nearly identical policies issued to Davis and Ginsberg by Harleysville Worcester Insurance Company. Both policies have Uninsured/ Underinsured Motorist coverage ("UM/UIM") of $100,000 per person and $300,000 per accident. We will refer to the policies as the Davis Policy and the Ginsberg Policy. Both policies also contain the following provisions:

**Other Insurance**

If there is other applicable insurance available under one or more policies or provisions of coverage that is similar to the insurance provided under this Part of the Policy:
1. Any insurance we provide with respect to a vehicle:
    a. You do not own, including any vehicle while used as temporary substitute for "your covered auto"; or
    b. Owned by you or any "family member", which is not insured for this coverage under this Policy; shall be excess over any collectible insurance providing such coverage on a primary basis.
2. If the coverage under this Policy is provided:
    a. On a primary basis, we will pay only our share of the loss that must be paid under insurance providing coverage on a primary basis. Our share is the proportion that our limit of liability bears to the total of all applicable limits of liability for coverage provided on a primary basis.

4

b. On an excess basis, we will pay only our share of the loss that must be paid under insurance providing coverage on an excess basis. Our share is the proportion that our limit of liability bears to the total of all applicable limits of liability for coverage provided on an excess basis.[2]

**Two Or More Auto Policies**

If this Policy and any other auto insurance policy issued to you or any resident of your household, by us or any company affiliated with us, apply to the same accident, the maximum limit of liability under all the policies shall not exceed the highest applicable limit of liability under any one policy.[3]

Davis, Brandon Zoladkiewicz, and Ginsberg lived together and were covered under both policies as members of the same household.

Following the crash, Ginsberg and Brandon Zoladkiewicz filed a claim under both policies. In exchange for releases, Harleysville agreed to pay $200,000 in UM/UIM benefits under the Davis Policy but refused to pay any benefits under the Ginsberg Policy. Harleysville claimed that the "Two Or More Auto Policies" provisions in each policy prohibited members of the same household from combining or stacking UM/UIM coverage under the separate policies issued by Harleysville.

---

[2] App. to Pls. Below/Appellants' Opening Br. on Appeal at A40 [hereinafter A__].

[3] *Id.*

B.

The plaintiffs sued Harleysville for breach of contract. In dispositive motion briefing, Harleysville argued that, under Section 3902(c) of the Delaware Insurance Code, the "Two Or More Auto Policies" provision is an anti-stacking provision. According to Harleysville, it paid $200,000 under the Davis Policy,[4] but the "Two Or More Auto Policies" provision in each policy prohibited combining UM/UIM benefits from a different policy issued by the same insurer. Harleysville also contended that, in any event, the plaintiffs signed releases when they accepted payment under the Davis Policy that released any further claims against Harleysville.

The plaintiffs responded that the Ginsberg Policy "Other Insurance" provision expressly permits stacking UM/UIM benefits, the "Other Insurance" and "Two Or More Auto Policies" provisions conflict and the policies are therefore ambiguous. The ambiguity, they argued, must be resolved in favor of the plaintiffs. Under their interpretation, the Davis Policy acts as primary coverage, and the Ginsberg Policy acts as secondary or excess coverage under the "Other Insurance" provisions. The

---

[4] Under the Davis Policy, Harleysville paid $100,000 to Brandon Zoladkiewicz for his bodily injury claim against the uninsured drunk driver. Harleysville also paid $100,000, split between Brandon, Ginsberg, and Bryce Davis, for Davis's wrongful death claim against the uninsured drunk driver. Plaintiffs' Response to Court's Letter of June 20, 2023, at 6, *Ginsburg* [sic] *v. Harleysville Worcester Ins. Co.*, C.A. No. N22C-08-165 (Del. Super. July 15, 2023), Docket No. 23 [hereinafter Super. Ct. Dkt. ___].

plaintiffs also argued that the Davis Policy settlement releases did not release the estate's claims under the Ginsberg Policy.

C.

The Superior Court granted Harleysville's motion and dismissed the complaint.[5]  First, it held that "anti-stacking provisions are permitted" under the statute.[6]  The court observed that, despite changes to other parts of Section 3902(c), the statute "remain[ed] unchanged and retains the precise language from 1997."[7]  The court also held that, under the statute, "stacking is not permitted as a matter of law."[8]

The court relied heavily on our decision in *Bromstad-Deturk v. State Farm Mutual Automobile Insurance Co.*[9]  In *Bromstad-Deturk*, the plaintiff and her husband held separate UM/UIM policies from the same carrier.  Our Court affirmed the Superior Court's judgment that the policies could not be stacked.

The Superior Court also addressed the conflict between the "Other Insurance" and "Two Or More Auto Policies" provisions.  It found that "there is some ambiguity

---

[5] *Ginsberg v. Harleysville Worcester Ins. Co.*, 2023 WL 7210216 (Del. Super. Ct. Oct. 31, 2023) [hereinafter *Superior Court Opinion*].

[6] *Id.* at *6.

[7] *Id.* at *7.

[8] *Id.*

[9] 974 A.2d 857, 2009 WL 1525948 (Del. June 2, 2009) (TABLE).

between the two provisions located on the same page as the UM/UIM section of the policies."[10]   And "[b]ecause the contract provided two potentially conflicting provisions on the same page, a consumer could have reasonably interpreted the language to mean that there was a right to excess coverage without any carveouts or exceptions."[11]

The court ultimately decided, however, that the ambiguity did not affect the outcome.  According to the court, "to find that the ambiguity in the policies equates to permissible stacking would constitute an absurd result" and "go against the interpretation by the Supreme Court, which has determined that anti-stacking provisions are permissible."[12]  The court concluded that "the law was intended to prevent stacking of all policies issued by the same carrier, provided that the anti-stacking provision is in the contract."[13]

D.

On appeal, the plaintiffs argue that the Superior Court erred when it found that Section 3902(c) prohibits stacking.  They contend that "[t]he trial court essentially

---

[10] *Superior Court Opinion* at *8.

[11] *Id.* at *9.

[12] *Id.*

[13] *Id.* at *7.  The court also noted the unfairness caused by the lack of notice to consumers of the consequences of anti-stacking provisions.  *Id.* at *10–11.  Without a notice requirement, the court warned, "insurance policies will continue to be sold with anti-stacking provisions that absolves insurers from any obligation to pay additional coverage, so long as the insured continues to do business with them."  *Id.* at *11.

held that its hands are tied due to the language of section 3902(c)" but the statute is permissive, not mandatory.[14] The plaintiffs also claim that "there are only two reasonable interpretations of the subject policy in the context of stacking": either the policies expressly permit stacking, or the policies are ambiguous and should be construed against Harleysville to permit stacking.[15]

Second, the plaintiffs argue that the court's decision should be reversed on public policy grounds. They contend that Harleysville's failure to provide notice that UM coverage could not be stacked across policies is unfair to consumers and therefore violates public policy. The plaintiffs also argue that ambiguous policy language led the insureds to reasonably believe that stacking is permissible where one of the coverages can provide excess coverage. Failure to honor the insureds' reasonable expectations and provide coverage, the plaintiffs contend, violates public policy. Finally, the plaintiffs argue that "[t]he enforcement of section 3902(c) has unconscionably and unconstitutionally robbed policyholders of the contractual benefits for which they paid good and valuable consideration."[16]

We review the Superior Court's decision *de novo*.[17]

---

[14] Opening Br. at 6.

[15] *Id.* at 16.

[16] *Id.* at 27.

[17] *See State Farm Mut. Auto. Ins. Co. v. Clarendon Nat'l Ins. Co.*, 604 A.2d 384, 387 (Del. 1992) ("A trial court's construction of a statute is reviewed by this Court *de novo*. A trial Court's interpretation of an insurance policy is also a determination of law. Consequently, the appropriate

## II.

The Superior Court held that Section 3902(c) prohibits stacking "as a matter of law."[18] As we have held, however,[19] and as the Superior Court recognized in another part of its opinion,[20] the statute is enabling and not prohibitory – the statute allows carriers to insert provisions that limit their liability in UM/UIM policies when the statutory conditions are met. If the statutory conditions are met, the carrier can limit its liability to the highest limit of liability applied to any one vehicle:

> The affording of insurance under this section to more than 1 person or to more than 1 vehicle shall not operate to increase the limits of the insurer's liability. When 2 or more vehicles owned or leased by persons residing in the same household are insured by the same insurer or affiliated insurers, *the limits of liability . . . shall not exceed the highest limit of liability applicable to any 1 vehicle*.[21]

The statute does not prohibit stacking. Instead, under the circumstances described in the statute, the policy with the "highest limitation of liability" caps any recovery.

standard of appellate review requires this Court to determine whether the Superior Court 'erred in formulating or applying legal precepts.'" (citations omitted)).

[18] *Superior Court Opinion* at *7.

[19] *See Bromstad-Deturk*, 2009 WL 1525948974 at *2 ("Section 3902(c) clearly and unambiguously *allows* the type of anti-stacking provision found in Bromstad-Deturk's policies." (emphasis added)).

[20] Later in its opinion, the court stated that "the law was intended to prevent stacking of all policies issued by the same carrier, provided that the anti-stacking provision is in the contract." *Superior Court Decision* at *7. If, according to the Superior Court, the anti-stacking provision must be in the insurance policy, the statute does not prohibit stacking as a matter of law.

[21] 18 *Del. C.* § 3902(c) (2024) (emphasis added).

10

In other words, a carrier is free to define the highest limit of liability as it wishes. The policy with the "highest limit of liability" sets the maximum recovery.

Here, we have policies that are nearly identical. Through their "Other Insurance" provisions, the Davis and Ginsberg Policies permit stacking – one policy acts as primary coverage, and the other policy provides excess coverage. The rub is that both policies also contain a "Two Or More Auto Policies" provision. That provision essentially borrows the language from Section 3902(c) and limits coverage to the "highest applicable limit of liability under any one policy."

We agree with the Superior Court that, read together, the "Other Insurance" and "Two Or More Auto Policies" provisions are ambiguous.[22] As the Superior Court held, a reasonable consumer could read one policy as excess to the other "without any carveouts or exceptions."[23] Our decision in *Bromstad-Deturk* is instructive and confirms the ambiguity. The policies in *Bromstad-Deturk* had provisions like the "Other Insurance" and "Two Or More Auto Policies" in this case, with one critical difference – the comparable "Other Insurance" provision was made

---

[22] In *Penn Mutual Life Insurance Co. v. Oglesby*, we reviewed an insurance policy provision that denied coverage, but that provision is "subject to all provisions" of the policy, at least some of which provide coverage. 695 A.2d 1146, 1151 (Del. 1997). We held that "[a]n insurance policy must be read as a whole." *Id.* Reading all the provisions together, the policy provided coverage. *Id.* And alternatively, "[a]t best, the policy is unclear or ambiguous." *Id.*

[23] *Superior Court Opinion* at *9.

expressly "subject to" the comparable "Two Or More Auto Policies" provision.[24]

Here, the "Other Insurance" provision is not subject to the "Two Or More Auto Policies" provision.

When interpreting insurance contracts, "[i]t is the obligation of the insurer to state clearly the terms of the policy."[25] If the insurance contract is ambiguous, "the principle of *contra proferentem* dictates that the contract must be construed against the drafter."[26] As we have stated before:

> The policy behind this principle is that the insurer or the issuer, as the case may be, is the entity in control of the process of articulating the terms. The other party, whether it be the ordinary insured or the investor, usually has very little say about those terms except to take

---

[24] The limit of liability provision states:

1. Coverage Provided by Us or an Affiliated Company:
   If two or more vehicles owned or leased by **you**, **your spouse** or any **relative** are insured for this coverage under one or more policies issued by us or an affiliated company, the total limit of liability under all such coverages shall not exceed that of the coverage with the highest limit of liability.

The excess coverage provision states:

3. Subject to item 1 above:
   a. If an **insured** as defined in item 1, 2, or 3 of the definition of **insured** sustains **bodily injury** while **occupying** a vehicle which is not owned by **you**, **your spouse** or any relative, our limit of liability applies as excess to any other coverage available from a policy covering the vehicle **occupied** or its driver.

Exhibit B to Defendant's Motion to Dismiss at 18, *Bromstad-Deturk v. State Farm Mut. Auto. Ins. Co.*, C.A. No. 08C-02-118 (Del. Super. Ct. Apr. 17, 2008), Docket No. 8.

[25] *Penn Mut. Life Ins. Co. v. Oglesby*, 695 A.2d 1146, 1149 (Del. 1997).

[26] *Id*. at 1149–50. When *contra proferentem* is applied, it means that "ambiguities in a contract will be construed against the drafter." *Bank of New York Mellon v. Commerzbank Cap. Funding Tr. II*, 65 A.3d 539, 551–52 (Del. 2013).

them or leave them or to select from limited options offered by the insurer or issuer. Therefore, it is incumbent upon the dominant party to make terms clear. Convoluted or confusing terms are the problem of the insurer or issuer-not the insured or investor.[27]

The Davis and Ginsberg policies are ambiguous. We construe them against the insurer. The highest limit of liability across the Ginsberg and Davis policies is the coverage provided by one policy as primary with the second policy providing "excess" coverage. The plaintiffs are entitled to coverage under the Ginsberg Policy as excess to the Davis Policy.[28]

III.

Harleysville also argues that, in any event, the plaintiffs cannot recover because they signed settlement releases as part of the Davis Policy payment. The plaintiffs counter on both procedural and substantive grounds. Procedurally, the plaintiffs observe that the Superior Court did not consider this issue and therefore we should not hear it for the first time on appeal.[29] Substantively, the plaintiffs argue that the settlement releases limit their scope to claims made under the Davis Policy,[30]

---

[27] *Oglesby*, 695 A.2d at 1150.

[28] *Id.* at 1151 (holding that where misstatements provision coupled with exclusion of pre-existing conditions provision appear to be inconsistent, "the policy is unclear or ambiguous, with the result that the insurer may not prevail under the doctrine of *contra proferentem*").

[29] Reply Br. at 9. The plaintiffs argue that "[i]n the event this Court determines that the releases present a case-dispositive issue, . . . the issue must first be decided by the trial court." *Id.*

[30] *Id.* at 10.

and, in any event, the settlement releases are ambiguous and should be construed against Harleysville.[31]

The plaintiffs' procedural objection is easily disposed of. On appeal, we can affirm on the basis of an argument not addressed by the trial court if the argument was raised below and argued as an alternative ground for affirmance on appeal.[32] That is the case here. Harleysville asserted the releases below.

Turning to the substance of the arguments, although the release is broad, Ginsberg signed the release ("Ginsberg Release") in his individual capacity.[33] He did not sign as executor of Davis's estate.[34] Thus, Ginsberg, individually, is precluded from recovering under the Ginsberg Policy, but Davis's estate is not.

Brandon Zoladkiewicz also signed a release under the Davis Policy (the "Zoladkiewicz Release"). It contains the same terms as the Ginsberg Release but includes an additional sentence at the end of the first paragraph: "This release applies to consideration paid under policy no. S1 396913005 only."[35] The additional

---

[31] *Id.*

[32] *Unitrin, Inc. v. Am. Gen. Corp.*, 651 A.2d 1361, 1390 (Del. 1995).

[33] App. to Defs. Below/Appellee's Answering Br. on Appeal at B70 [hereinafter B__].

[34] *Id.*

[35] B78. On December 1, 2021, Brandon Zoladkiewicz originally executed the release through a minor's settlement agreement signed by his natural father, Ron Zoladkiewicz. RELEASES FOR ALL PARTIES at 13–15, (Del. Super. Mar. 31, 2023), Super. Ct. Dkt. 20. This release did not contain the additional sentence. *Id.* However, Brandon turned 18 years old before the settlement under the Davis Policy was approved by the court. Plaintiffs' Response to Court's Letter of June

sentence limits the scope of the Zoladkiewicz Release to the Davis Policy settlement payment. Thus, Brandon Zoladkiewicz is not precluded from recovering under the Ginsberg Policy.

IV.

In 2009 in *Bromstad-Deturk*, we recommended that the General Assembly consider amending Section 3902 to require insurers to notify consumers about the consequences of insureds in the same household purchasing multiple policies from the same or affiliated carriers. As is apparent, consumers whose policies are covered by the statute are at risk of paying twice for only one coverage. We renew our call for the General Assembly to consider the notice issue. A notice requirement would better inform consumers of the possible disadvantages of individuals residing in the same household insuring multiple vehicles through the same or affiliated insurers.

V.

We reverse the judgment of the Superior Court. Davis's estate can recover under the Ginsberg Policy as excess to the Davis Policy, up to $100,000. Brandon Zoladkiewicz can recover under the Ginsberg Policy as excess to the Davis Policy, up to $100,000. We remand the case for the Superior Court to determine, consistent

---

20, 2023, at 7, Super. Ct. Dkt. 23. As a result, the minor's settlement agreement became void, and Brandon signed a new release for the Davis Policy settlement on June 15, 2023. *Id.* Thus, the settlement release signed by Brandon, which contains this additional sentence, is the release that applies in this case.

with this opinion, the amount recoverable by Davis's estate and Brandon Zoladkiewicz under the Ginsberg Policy.