# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| DEL LAWS, LLC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | N23C-05-048 DJB |
| | ) | |
| SCOTTSDALE INDEMNITY | ) | |
| COMPANY, LORD INSURANCE | ) | |
| COMPANY, LLC, LAYAOU | ) | |
| LANDSCAPING, INC., JUDY | ) | |
| LAYAOU, and THE ESTATE OF | ) | |
| FRED LAYOU, | ) | |
| | ) | |
| Defendants. | ) | |

Date Submitted:  October 22, 2024
Date Decided:  January 22, 2025

**Memorandum Opinion on Plaintiff's Motion for Summary Judgment against Defendant Scottsdale Indemnity Company – GRANTED, in part, DENIED, in part.**

Adam F. Wasserman, Esquire, Ciconte Wasserman & Scerba, LLC, Wilmington, Delaware, *for Plaintiff*

Joelle E. Polesky, Esquire and Samuel E. Paul, Esquire (admitted *pro hac vice*), Stradley Ronon Stevens & Young, LLP, Wilmington, Delaware, *for Defendant Scottsdale Indemnity Company*

**BRENNAN, J.**

1

Plaintiff purchased a property occupied by its previous owners, the Layaous, via sheriff sale. After many filings in this Court, the previous owners were eventually evicted. While leaving, they stole property and created significant damage to the house and the land. Having feared vandalism during the eviction process, Plaintiff contacted Lord Insurance Company, LLC (hereinafter "Lord") for a policy on the property. Plaintiff eventually obtained a policy with Scottsdale Indemnity Company (hereinafter "Scottsdale"), which contained an exclusion for property taken by theft (hereinafter "Theft Exclusion"). Upon assessing the destruction left by the Layaous, Scottsdale deemed all but $5,494.18 of the $400,000.00 estimated damages excluded from coverage by the Theft Exclusion.[1]

Plaintiff sued Scottsdale, Lord, the Layaous, and their landscaping company. Against Scottsdale, Plaintiff brought a breach of contract action.[2] Plaintiff moved for summary judgment against Scottsdale, claiming the Theft Exclusion is ambiguous and thus void.[3] Scottsdale opposed.[4] Because the language in the majority of the exclusion is clear, Plaintiff's motion is denied, in part. Any items stolen are excluded from coverage. However, the final line of the exclusion is

---

[1] Del Laws, LLC v. Scottsdale Indemnity Company, et. al.; N23C-05-048 DJB, D.I. 1, ¶ 54.
[2] D.I. 1.
[3] Plaintiff's Motion for Summary Judgment, D.I. 48.
[4] D.I. 54.

circular, and thus ambiguous, so it will be construed against the insurer per Delaware contract law. As a result, coverage is found for damages resulting from any theft.

## I. FACTUAL AND PROCEDURAL HISTORY

Plaintiff Del Law LLC's (hereinafter "Del Laws") claims arise from the purchase of a home at 2975 Del Laws Road in Bear, Delaware (hereinafter "the Property"). Michael Karas is the owner of Del Laws, who purchased the Property at a sheriff sale in May of 2020.[5] Karas routinely purchases real estate and developed a longstanding business relationship with Lord to ensure proper protection for his assets.[6] When Karas inspected the Property he discovered the prior tenants, the Layaous, still living there.[7]

Worried the Layaous would not leave voluntarily, Karas contacted his insurance company, Lord, to ensure an active policy was in place on the Property.[8] Karas texted Lord specifically seeking vandalism coverage.[9] Lord informed Karas that his desired policy would cover "[d]welling fire, landlord policies, [sic] call it malicious mischief which is tenant vandalism basically."[10] Lord later confirmed with Karas the Property was covered by a Nationwide policy underwritten by

---

[5] D.I. 1, ¶ 9.
[6] *Id.* at ¶ 10.
[7] *Id.* at ¶ 19.
[8] *Id.* at ¶ 24.
[9] *Id.* at ¶ 28.
[10] *Id.* at ¶ 23.

Scottsdale ("the Policy").[11] Lord also assured Karas that "malicious mischief which is tenant vandalism [sic]"[12] is covered, and advised theft coverage was unnecessary because no legitimate renters or tenants were present.[13]

Between May of 2020 and February of 2021 Karas became increasingly worried the Layaous would harm the Property.[14] He again contacted Lord to ensure the Policy was still active and to increase liability limit. Lord confirmed the Property was covered and emailed the agent responsible for issuing the Policy on behalf of Scottsdale, "just triple checking. If the tenants vandalise [sic]/destroy the property this is covered correct?"[15] The agent responded "[t]here is a theft exclusion form on the policy. But in regards to if property is destroyed – will depend upon the circumstances and how the claim adjuster reads the policy forms."[16]

The Policy covers direct physical loss of or damage to the covered property, which includes indoor and outdoor fixtures.[17] "The Policy's Causes of Loss – Special Form" describes covered losses when special cause is shown, "unless the

---

[11] *Id.* at ¶ 29.
[12] *Id.* at ¶ 31.
[13] *Id.* at ¶ 31, 32.
[14] *Id.* at ¶ 37.
[15] *Id.* at ¶38.
[16] *Id.* at ¶ 41.
[17] D.I. 48.

loss is excluded or limited in this policy."[18]   One of the Policy's exclusions is the

Theft Exclusion, which states:

> We will not pay for loss or damage caused by or resulting from theft.
> But we will pay for:
>
> 1.  Loss or damage that occurs due to looting at the time and place of a
>     riot or civil commotion; or
>
> 2. Building damage caused by the breaking in or exiting of burglars.
>
> And if the theft results in a Covered Cause of Loss, we will pay for the
> loss or damage caused by that Covered Cause of Loss.[19]

"Theft" and "vandalism" are not defined in the Policy.[20]

On May 6, 2021, the Superior Court issued an order vacating the Layaous

from the Property.[21]   As Karas feared, the Layaous (with the help of their

Landscaping company, Defendant Layaou Landscaping, Inc.) removed dozens of

fixtures including doorknobs, ceiling tiles, fireplaces, built-in shelves, water

features, sheds, a hot tub, a gazebo, shrubs and trees from the Property.[22]   Karas

immediately contacted the police and filed a claim with Scottsdale.[23]   Plaintiff

---

[18] Scottsdale's Opposition to Plaintiff's Motion, D.I. 54.
[19] *Id.*, Exhibit 3.
[20] D.I. 1 at ¶ 56.
[21] *Id.* at ¶ 45; *Deutsche Bank National Trust Company v. Fred P. Layaou, Jr. and Judy Layaou*, N19L-10-110 CEB, D.I. 53.
[22] Del Laws, LLC v. Scottsdale Indemnity Company, et. al.; N23C-05-048 DJB, D.I. 1 at ¶¶ 48-51; D.I. 48.
[23] The police declined to file criminal charges, advising Karas to address this as a civil matter.  D.I. 1 at ¶ 52.

alleges the Layaous caused $400,000 worth of damage.[24]  Scottsdale tendered $5,494.18 to Plaintiff and denied coverage for the remaining damages based upon the Theft Exclusion.[25]

Plaintiff filed a suit against Scottsdale, Lord, the Layaous, and Layaou Landscaping Inc., bringing breach of contract and tort claims for the damage to the Property.[26]  According to Plaintiff, Scottsdale breached the insurance contract when it denied coverage.[27]  Scottsdale denies all breach of contract allegations against it.[28]

On July 14, 2024, Plaintiff moved for summary judgment against Scottsdale challenging the Theft Exclusion as ambiguous for two reasons.[29]  First, Plaintiff argues the Theft Exclusion is ambiguous because the terms "theft" and "vandalism" are undefined.[30]  Alternatively, Plaintiff argues that the language in the Theft Exclusion is unclear and circular, because it "does not discern the difference between damages 'resulting from theft' – which are excluded – and 'if theft results in damages'", which are covered."[31]

---

[24] *Id.* at ¶¶ 51, 57.
[25] *Id.* at ¶ 54.
[26] *See generally* D.I. 1.
[27] *Id.*
[28] Scottdale's Answer, D.I. 22, 32.
[29] D.I. 48.
[30] *Id.*
[31] *Id*.

On September 27, 2024, Scottsdale responded in opposition.[32]  Scottsdale submits the Theft Exclusion is clear and unambiguous.  Specifically, Scottsdale argues "[a] term is not ambiguous simply because it is not defined."[33]  Scottsdale also challenges Plaintiff's alternative argument and attempts to distinguish the case law upon which Plaintiff relies.[34]  As such, Scottsdale requests this Court find that the damage to Plaintiff's property constitutes theft, not vandalism, according to the clear plain language of the Theft Exclusion.

Plaintiff filed a reply on October 20, 2024;[35] oral argument was held on October 22, 2024.  This is the Court's decision.

## II.    STANDARD OF REVIEW

Under Superior Court Civil Rule 56, the moving party has the burden to demonstrate that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."[36]  The moving party bears this initial burden of proof.[37]  If the motion is properly supported, the burden then shifts to the non-moving party to demonstrate there are material issues of fact.[38]  The

---

[32] D.I. 54.
[33] D.I. 54.
[34] *Id.*
[35] D.I. 55.
[36] Del. Super. Ct. Civ. R. 56(c).
[37] *Radulski v. Liberty Mut. Fire Ins. Co.*, 2020 WL 8676027, at *3 (Del. Super. Ct. Oct. 28, 2020).
[38] *Moore v. Sizemore*, 405 A.2d 679, 681 (Del. 1979) (citations omitted).

7

Court will not grant summary judgment if it appears that there is a material fact in dispute or that further inquiry into the facts would be appropriate.[39] In determining whether a genuine issue of material fact exists, the Court must view the facts in the light most favorable to the non-moving party.[40]

## III.    ANALYSIS

Contract interpretation issues are questions of law.[41] Delaware courts interpret clear and unambiguous contract terms by their ordinary meaning.[42] "Contract terms themselves will be controlling when they establish the parties' common meaning so that a reasonable person in the position of either party would have no expectations inconsistent with the contract language."[43] In reviewing a contractual dispute, the Court's role is to effectuate the parties' intent according to "the parties' words and the plain meaning of those words where no special meaning is intended."[44] A court will find a contract ambiguous only, "when its provisions

---

[39] *Legion Partners Asset Mgmt., LLC v. Underwriters at Lloyds London*, 2021 WL 6621168, at *6 (Del. Super. Ct. Sept. 30, 2021).

[40] *Capano v. Lockwood*, 2013 WL 2724634, at *2 (Del. Super. Ct. Feb. 20, 2013).

[41] *Paul v. Deloitte & Touche, LLP*, 974 A.2d 140, 145 (Del. 2009).

[42] *GMG Capital Investments, LLC v. Athenian Venture Partners I, L.P.*, 36 A.3d 776, 780 (Del. 2012).

[43] *Id.* (quoting *Eagle Industries, Inc. v. DeVilbiss Health Care, Inc.*, 702 A.2d 1228, 1232 (Del. 1997)).

[44] *Lorillard Tobacco Co. v. Am. Legacy Foundation,* 903 A.2d 728, 739 (Del. 2006) (citing *Northwestern National Ins. Co. v. Esmark, Inc.*, 672 A.2d 41, 43 (Del. 1996)).

reasonably are susceptible to different interpretations or may have two or more different meanings."[45]

When reviewing an insurance contract for potential ambiguity, the Court must review the entirety of the contract and not just the particular challenged provisions.[46] The court reviews an insurance contract with the goal of giving effect to each term of the agreement.[47] Where the language and terms of an insurance contract are clear and unequivocal, "the parties are bound by their plain meaning."[48] The Court should not create ambiguity, and "ambiguity does not exist where the court can determine the meaning of a contract 'without any other guide than a knowledge of the simple facts on which, from the nature of the language in general, its meaning depends."[49] Neither a split in authority in case law, nor the mere fact that counsel posits a differing interpretation of a contract dictates a finding of ambiguity; the court is to look to the plain language of the policy itself. Extrinsic evidence is excluded from the court's review.[50]

---

[45] *V & M Aerospace LLC v. V&M Co.*, 2019 WL 3238920, at *4 (Del. Super.) (internal citations omitted).

[46] *O'Brien v. Progressive Northern Ins. Co.*, 785 A.2d 284, 287 (Del. 2001).

[47] *Id.*

[48] *Id.* at 288.

[49] *Id.*, quoting *Rhone-Poulenc Basic Chems. Co. v. American Motorists Ins. Co.*, 616 A.2d 1192, 1196 (Del. 1992).

[50] *O'Brien*, 785 A.2d at 288.

It is well settled that a contract is not ambiguous simply because terms are undefined.[51] When terms are undefined, they are given their ordinary meaning.[52] Plaintiff argues that because the terms "theft" and "vandalism" are not defined, the policy is ambiguous and the Theft Exclusion should be stricken. In so arguing, Plaintiff urges the Court to consider the differences between personal property and fixtures and looks to common law concepts for a definition of theft, which purportedly excluded fixtures.

However, there is no need for the Court to look further than the dictionary, or ordinary meaning of theft in conjunction with the statutory definition of theft given in the criminal code. Title 11 of the Delaware Code states that "theft" occurs when a person, "takes, exercises control over or obtains property of another person intending to deprive that person of it or appropriate it."[53] Further, Miriam Webster defines "theft" as both, "the act of stealing, *specifically* the felonious taking and removing of personal property with intent to deprive the rightful owner of it" and "an unlawful taking (as by embezzlement or burglary) of property."[54] Vandalism is defined by Miriam Webster as "willful or malicious destruction or defacement of

---

[51] *Zurich Am. Ins. Co. v. Syngenta Crop Protection LLC*, 314 A.3d 665, 676 (Del. 2024).

[52] *Id.*

[53] 11 *Del. C.* § 841.

[54] *See* https://www.merriam-webster.com/dictionary/theft#:~:text=a,embezzlement%20or%20burglary)%20of%20property (emphasis in original)

10

public or private property."[55]   These are the respective ordinary meanings.   If property of another is taken – whether deemed a "fixture" for real estate purposes or not, it is considered theft under the ordinary definition of the word regardless of whether real estate law deems that property a fixture.

While the Theft Exclusion is not ambiguous simply because "theft" and "vandalism" are not defined, the analysis does not end.   Plaintiff has challenged the entirety of the Theft Exclusion as being ambiguous, and alternatively only challenged the final sentence as being circular, thus ambiguous.  Insurance contracts in Delaware are interpreted in a common-sense manner, allowing a reasonable policyholder to understand the scope and limitation of coverage.[56]   A policy is deemed ambiguous if it is susceptible to two reasonable interpretations.[57]   If found to be ambiguous, the policy language is construed most strongly against the insurance company, as that party bears the burden to state the terms clearly.[58] A plain reading of the Theft Exclusion, minus the last sentence, shows that it is clear: any property stolen is not covered under the policy.

Insurance policies are unclear when circular language is used.   While the language in the challenged Theft Exclusion has not been analyzed by a Delaware

---

[55] https://www.merriam-webster.com/dictionary/vandalism
[56] *Penn Mut. Life Ins. Co. v. Oglesby*, 695 A.2d 1146, 1149-50 (Del. 1997).
[57] *O'Brien*, 785 A.2d at 288; *see also V&M Aerospace*, 2019 WL 3238920, at *4.
[58] *Steigler v. Ins. Co. of N. Am.*, 384 A.2d 398, 400-01 (Del. 1978); *Penn Mut.*, 695 A.2d. at 1149-50.

court, the United States District Court for the Southern District of Indiana had such an opportunity. In *Endurance Capital, LLC v. Seneca Insurance Company, Inc.*, the identical Theft Exclusion was challenged in a declaratory judgment action following a denial of coverage where trespassers stole numerous items at the covered property and caused "extensive damage."[59] The challenged language in that policy read as follows:

> We will not pay for loss or damage *caused by or resulting from theft*. But we will pay for:
>
> 1. Loss or damage that occurs due to looting at the time and place of a riot or civil commotion; or
> 2. Building damage caused by the breaking in or exiting of burglars.
>
> And *if theft results in a Covered Cause of Loss, we will pay for the loss or damage caused by that Covered Cause of Loss*.[60]

When analyzing the Theft Exclusion from the viewpoint of an ordinary policy holder, *Endurance Captial* concluded "there is no question that the Theft Exclusion is ambiguous."[61] The holding highlighted the inconsistency between the Exclusion's first sentence, "we will not pay for loss or damage caused by or resulting from theft, with the policy's last sentence, "[a]nd if the theft results in a Covered Cause of Loss, we will pay for the loss or damage caused by that Covered Cause of Loss,"

---

[59] *Endurance Capital LLC v. Seneca Ins. Co., Inc.*, 2023 WL 7159000, at *1 (S.D. Ind. Oct. 31, 2023).
[60] *Id.* at *17 (emphasis added).
[61] *Id.*, at *18.

> Notably the Policy does not discern the difference between damages 'resulting from theft' – which are excluded – and 'if theft results in' damages from a Covered Cause of Loss – which the Policy covers. This language is circular and does not lead to one reasonable interpretation.[62]

The same is true for the challenged Theft Exclusion in the Scottsdale policy at issue here.

Like the Exclusion in *Endurance Capital*, Scottsdale's policy fails to differentiate damages "resulting from theft," which the policy does not cover, from "if theft results in" damages, which the policy covers. In reviewing the challenged language: "[a]nd if the theft results in a Covered Cause of Loss, we will pay for the loss or damage caused by that Covered Cause of Loss," along with the policy as a whole, a reasonable policy holder cannot discern whether damages resulting from theft also result in a Covered Loss under the Policy as it's currently written. Therefore, the circular nature of the Theft Exclusion renders the final line ambiguous.[63]

As in *Endurance Capital*, here, any stolen items removed from the property are clearly and unambiguously excluded from coverage under the Policy. It is the "damages resulting from the theft" language that is ambiguous and unclear. As a

---

[62] *Id.*

[63] Indiana contract law tracks Delaware contract law. *See Champlain Capital Partners, L.P. v. Elway Co., LLP*, 58 N.E.3d 180, 201-202 (Ind. Ct. App. 2016) (finding the lower court's application of Delaware law, instead of Indiana law, to a breach of contract claim was harmless error).

result, that language will be construed against Scottsdale; evidence of damages may be presented to a jury who will be tasked with determining what damages were a result of theft (excluded from coverage) vs. "damages that resulting from theft" or vandalism (covered losses).

Scottsdale attempted to distinguish *Endurance Capital* and urged the Court to follow the decisions of *Bita Trading, Inc. v. Nationwide Mutual Insurance Company*[64] and *Chalmers Management, Inc. v. Western Heritage Insurance Company*[65] where Theft Exclusions were upheld. Contrary to Scottsdale's assertions, those cases are distinguishable from the case at bar.[66]

In *Bita*, the United States District Court for the Southern District of California considered whether damage to fixtures resulting from theft was excluded from an insurance policy. That policy's theft exclusion provides:

> We will not pay for loss or damage caused by or resulting from theft [b]ut we will pay for: 1. Loss or damage that occurs due to looting at the time and place of a civil riot or commotion; or 2. Building damage caused by the breaking in or exiting of burglars.[67]

---

[64] *Bita Trading, Inc. v. Nationwide Mut. Ins. Co.*, 2015 WL 433557 (S.D. Cal. Feb. 3, 2015).

[65] *Chalmers Management, Inc. v. Western Heritage Insurance Co.*, 2015 WL 1005371 (E.D. Mich. Mar. 5, 2015).

[66] The Court duly considered all of the cases cited by all parties but is discussing the distinguishing features of only some at its discretion.

[67] *Bita*, 2015 WL 433557, at *4.

14

The Court then cross-referenced the exclusion with the policy's definition of a covered loss, "the type of property described in this section A₁, and limited in A₂, Property Not Covered if a Limit of Insurance is shown in the Declarations for that type of property."[68]  Using the provisions in tandem, the Court concluded "[d]amages to personal property or fixtures, and the resulting damage to the building related to the removal and theft of the personal property or fixtures, are not covered losses pursuant to the Theft Exclusion."[69]

What is noticeably absent from the *Bita* language is last sentence found in the Scottsdale Theft Exclusion and in *Endurance Capital*.  It is not the language that excludes coverage for theft that is problematic.  Rather, it is that last sentence of the Exclusion that creates the ambiguity.  Additionally, California does not track Delaware contract law.[70]

The *Chalmers* decision is similarly inapplicable.  Although the policy in *Chalmers* contains identical language to the challenged language here, the *Chalmers* court was not asked to determine the validity of the language.  Instead, the court was tasked with reviewing the record upon summary judgment to determine if there was

---

[68] *Id.*, at *3.
[69] *Id.*, at *4.
[70] *Focus Financial Partners, LLC v. Holsopple*, 250 A.3d 939, 959 ("As between Delaware law and California law, it is highly likely that Delaware law will apply [to Plaintiff's breach of contract claim"]).

15

sufficient evidence of damages.[71]  The question presented was whether the damages resulted from theft or from vandalism.  There was no challenge to the language as being ambiguous, therefore, while *Chalmers* reviewed the language to determine damages under the exclusion, it did not engage in any ambiguity review.[72]  Therefore, while similar, the *Chalmers* opinion is not helpful to the Court in this analysis.

Finally, the case of *Certain Underwriters at Lloyds, London v. Law*, likewise cited in the briefing, is also distinguishable.  In *Certain Underwriters*, the 5th Circuit Court of Appeals addressed a theft exclusion that reads: "We will not pay for loss or damage caused by or resulting from theft, except for building damages caused by the breaking in or exiting of burglars."[73]  After thieves stole copper wire from rooftop air conditioning units, the insurance claim was denied as excluded by the above clause.   Examining Texas law, which is similar to Delaware contract law, the 5th Circuit Court of Appeals reversed the District Court's declaratory judgment finding coverage.  Present in the *Certain Underwriters* policy, but not present here, was a definition of vandalism.   Further, the *Certain Underwriters* policy was not ambiguous.  That policy did not include the circular language present here and found

---

[71] *Chalmers Management, Inc.*, 2015 WL 1005371 at *1-2.
[72] *Id.*
[73] *Certain Underwriters at Lloyds, London v. Law*, 570 F.3d 574, 576 (5th Cir. 2009)

16

problematic in *Endurance Capital*. While the *Certain Underwriters* Court engaged in a thorough analysis regarding whether ambiguity existed in the policy, the policy didn't include any circular language. Simply put, the 5th Circuit was not faced with the issue presented here.

While similar, the cases cited by Scottsdale in defense of its opposition to Plaintiff's summary judgment motion are not dispositive to this issue. The policy language excluding any items stolen is clear and unambiguous. However, the last language of the Exclusion, "[a]nd if the theft results in a Covered Cause of Loss, we will pay for the loss or damage caused by that Covered Cause of Loss," is ambiguous, and in accordance with Delaware law, must be construed against the insurer and in favor of the insured. Accordingly, Plaintiff's Motion for Summary Judgment is **GRANTED in part; DENIED in part**.

**IT IS SO ORDERED.**

_____
Danielle J. Brennan, Judge